**DOOR–MASTER CORPORATION,**
Plaintiff–Cross Appellant,

v.

**YORKTOWNE, INC., Defendant–Appellant,**

and

**Conestoga Wood Specialties, Inc., Defendant–Appellant.**

Nos. 00–1526, 00–1527, 00–1551.

United States Court of Appeals, Federal Circuit.

July 10, 2001.

Rehearing Denied Aug. 22, 2001.

Jonathan E. Moskin, Pennie & Edmonds LLP, of New York, NY, argued for plaintiff-cross appellant. With him on the brief was Lavatus V. Powell. Of counsel on the brief was Arthur M. Peslak, Mandel & Peslak LLC, of Freehold, NJ.

Jeffrey T. Shaw, Jenner & Block, of Chicago, IL, argued for defendant-appellant Yorktowne, Inc. With him on the brief were Arthur Gollwitzer III, and Arthur M. Martin.

Richard W. Foltz, Jr., Pepper Hamilton LLP, of Philadelphia, PA, argued for defendant-appellant Conestoga Wood Specialties, Inc. With him on the brief was Michelle S. Waker.

Before RADER, GAJARSA, and LINN, Circuit Judges.

RADER, Circuit Judge.

After a jury trial, the United States District Court for the District of New Jersey awarded Door–Master Corporation damages for Yorktowne, Inc.'s and Conestoga Wood Specialties, Inc.'s infringement

of U.S. Patent No. Des. 338,718 (the '718 patent). The district court denied Yorktowne's and Conestoga's motion for judgment as a matter of law. The district court also declined to award attorney fees to Door–Master even though the jury found that Yorktowne's infringement was willful. Because the district court did not err in denying judgment as a matter of law and did not abuse its discretion in declining to award attorney fees, this court affirms.

## I.

There are two basic ways to mount a cabinet door on the surrounding cabinet frame: inset mounting and overlay mounting. With inset mounting, the door fits within the frame and does not cover any of the frame's front surface. The front surface of an inset-mounted door is typically flush with the front surface of the surrounding frame. With overlay mounting, the door covers some or all of the frame's front surface. The rear surface of an overlay-mounted door abuts the front surface of the frame and the front surface of the door is offset from the front surface of the frame. During mounting, inset-mounted doors are more difficult to align with the surrounding frame, but they generally have a more desirable appearance than overlay-mounted doors.

The '718 patent covers a design for an "integrated door and frame." As the name suggests, while the article shown in the '718 patent is a single door, its front view appears like an inset door and frame combination. Accordingly, the door has the desirable look of an inset-mounted door without the difficulty of inset mounting. As a design patent, the '718 patent includes a single claim. That claim reads, "An ornamental design for an integrated door and frame as shown and described." The '718 patent includes four figures:

FIG. 1 is a front elevation of the integrated door and frame of the present invention, the broken lines showing a door pull are for illustrative purposes only and form no part of the claim design.

FIG. 2 is a rear view of an integrated door and frame of FIG. 1;

FIG. 3 is a side elevation, both sides being identical, of an integrated door and frame of FIG. 1; and,

FIG. 4 is a section taken through 4—4 of FIG. 1, showing the tongue and groove construction of an integrated door and frame of FIG. 1.

FIG. 1

FIG. 4

FIG. 2

FIG. 3

Conestoga manufactures the accused door, known as the "Richland" door, for Yorktowne. Yorktowne markets and re-sells the Richland door for cabinets. Like the '718 patent design, the front view of the Richland door looks like an inset door and frame combination.

During trial, Conestoga and Yorktowne asserted Conestoga's CRP–10 door and a corresponding CRP–10 end panel as prior art against the '718 patent. Cabinet deal-ers have inset mounted the CRP–10 door within a beaded cabinet frame. When the inset-mounted CRP–10 door is closed, the front view of the combined door and frame

looks very similar to the front view of the '718 patent design shown in FIG. 1 above, except that the hinges of the CRP–10 are visible from the front. When the CRP–10 door is opened, the rear of the door becomes visible. The rear of the CRP–10 door lacks the outer border of the rear of the '718 patent design, as shown in FIG. 2.

The front of the CRP–10 end panel looks like FIG. 1 of the '718 patent. The rear of the end panel is fixed to a substrate at the end of a cabinet to simulate a door and frame that matches the adjacent doors and frames. Because the end panel is fixed to a substrate, it does not have a rear view that corresponds to the rear view shown in FIG. 2 of the '718 patent.

At trial, the jury made several findings: the '718 patent was not anticipated; the novel features of the '718 patent were primarily ornamental; the '718 design would not have been obvious at the time of filing; the Richland door infringed the '718 patent; Yorktowne had willfully infringed the '718 patent; and finally, Yorktowne and Conestoga were liable for Door–Master's lost profits. Following the jury verdict, the district court denied Yorktowne's and Conestoga's motion for judgment as a matter of law (JMOL) and declined to award Door–Master attorney fees based on the jury's finding of willful infringement. Yorktowne and Conestoga appeal the district court's denial of JMOL on the issues of anticipation and infringement. Door–Master appeals the district court's order denying attorney fees. This court has jurisdiction under 28 U.S.C. § 1295(a)(1) (1994).

## II.

■ This court reviews the district court's denial of JMOL without deference. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454, 46 USPQ2d 1169, 1172 (Fed. Cir.1998) (en banc). This court will only reverse the district court's JMOL denial "if the jury's factual findings are not supported by substantial evidence or if the legal conclusions implied from the jury's verdict cannot in law be supported by those findings." *Id.* Where, as here, a jury finds a patent valid, this court will not disturb that finding unless reasonable jurors could not have reached that verdict. *Perkin–Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 893, 221 USPQ 669, 673 (Fed.Cir.1984).

■ As with a utility patent, design patent anticipation requires a showing that a single prior art reference is "identical in all material respects" to the claimed invention. *Hupp v. Siroflex of Am., Inc.*, 122 F.3d 1456, 1461, 43 USPQ2d 1887, 1890 (Fed.Cir.1997). Because "[t]hat which infringes, if later, would anticipate, if earlier," *Peters v. Active Mfg. Co.*, 129 U.S. 530, 537, 9 S.Ct. 389, 32 L.Ed. 738 (1889), the design patent infringement test also applies to design patent anticipation. That test requires the court to first construe the claimed design, if appropriate, and then to compare the claimed design to the article. *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1404, 43 USPQ2d 1641, 1647 (Fed.Cir.1997).

■ In construing the claimed design, this court first notes that only "the non-functional aspects of an ornamental design as shown in a patent" are proper bases for design patent protection. *KeyStone Retaining Wall Sys., Inc. v. Westrock, Inc.*, 997 F.2d 1444, 1450, 27 USPQ2d 1297, 1302 (Fed.Cir.1993). In addition, "generally concealed features are not proper bases for design patent protection because their appearance cannot be a 'matter of concern.'" *Id.* at 1451 (quoting *In re Stevens*, 36 C.C.P.A. 1017, 173 F.2d 1015, 1016, 81 USPQ 362, 365–66 (1949)). The parties appear to agree that the front view of FIG. 1 (and the portions of FIG. 4 that show more detail of the front features) is

part of the claimed design and its features are proper bases for design patent protection. Moreover, the parties do not appear to dispute that the internal connecting features of FIG. 4 are generally concealed and thus are not protected by the design patent.

■ However, Yorktowne and Conestoga urge this court to construe the claims so that the rear features shown in FIG. 2 and part of FIG. 4 of the '718 patent are not part of the protected design. They assert that the rear features only appear in the patent to fully show the article of manufacture, as required by the regulations in effect when the '718 patent issued. *See* 37 C.F.R. § 1.152 (1993) (requiring design patent drawings to "contain a sufficient number of views to constitute a complete disclosure of the appearance of the article"). While a patented design may be embodied in less than an entire article of manufacture, *In re Zahn,* 617 F.2d 261, 267, 204 USPQ 988, 994 (CCPA 1980), a "patented design is defined by the drawings in the patent." *KeyStone,* 997 F.2d at 1450. Nothing in the '718 patent indicates that the rear features are not part of the claimed design. Indeed, the '718 patent claims "[a]n ornamental design for an integrated door and frame, as shown and described." Then FIG. 2 and part of FIG. 4 show the rear features.

Furthermore, § 1.152 may have required the drawings to disclose the appearance of the entire article of manufacture, but it did not require those drawings to claim the design embodied in the entire article of manufacture. This is clear from the '718 patent itself. The drawings show a door pull in broken lines and the description of FIG. 1 excludes that door pull from the claimed design by stating, "the broken lines showing the door pull are for illustrative purposes only and form no part of the claimed design." Similarly, the patentee could have shown the rear features in bro-

ken lines to comply with § 1.152 while excluding those features from the claimed design. Rather than doing so, the patentee included the rear features in the claimed design. In addition, the rear features are not generally concealed. After the door has been installed, the rear features may be temporarily hidden from view when the door is closed. The rear features are visible, however, before the door is installed and when the door is open during use. Accordingly, the rear features are not "hidden" and their appearance is a "matter of concern." *See KeyStone,* 997 F.2d at 1451 (holding that "there is no hidden portion" of a patented block even though "it ceases to be visible as a block when incorporated in a wall" because "[a]s a block, all parts of it are visible").

Finally, the rear features are not functional. Many different configurations of those features (oval, triangular, etc.) could perform the same functions of an integrated door and frame. *See L.A. Gear, Inc. v. Thom McAn Shoe Co.,* 988 F.2d 1117, 1123, 25 USPQ2d 1913, 1917 (Fed.Cir. 1993) ("When there are several ways to achieve the function of an article of manufacture, the design of the article is more likely to serve a primarily ornamental purpose."). Therefore, the rear features are proper bases for design protection in the '718 patent.

■ In the second step of the test for infringement or anticipation, the court compares the claim to the accused or allegedly anticipating article. For infringement or anticipation to be found the two designs must be substantially the same. *Gorham Mfg. Co. v. White,* 14 Wall. 511, 81 U.S. 511, 528, 20 L.Ed. 731 (1871). Two designs are substantially the same if their resemblance is deceptive to the extent that it would induce an ordinary observer, giving such attention as a purchaser usually gives, to purchase an article having one design supposing it to be the other. *Id.* In

making this comparison, the court must focus on the protected features of the design, and determine whether those common features would deceive the ordinary observer. *OddzOn Prods.*, 122 F.3d at 1405.

■ The front of the CRP–10 end panel and the front of the CRP–10 inset door and frame look very similar to the design features shown in FIG. 1 of the '718 patent. However, the CRP–10 door is mounted on hinges that are visible from the front when the door is closed. The '718 patent shows no such hinges. Moreover, the rear view of the prior art both the end panel and the CRP–10 inset door looks substantially different from the rear features of the '718 patent shown in FIG. 2 and part of FIG. 4. On the CRP–10 inset door, the entire outer border is missing. The back of the CRP–10 end panel does not have any visible features similar to the rear features shown in FIG. 2 and part of FIG. 4 of the '718 patent because it is secured to a substrate that covers the rear of the panel. In light of these differences between the design of the '718 patent and the prior art, a reasonable jury could have concluded that Yorktowne and Conestoga did not meet their burden of showing anticipation by clear and convincing evidence.

■ Yorktowne and Conestoga argue that the jury's finding that the CRP–10 door and end panel did not anticipate the '718 patent is inconsistent with its finding that the Richland door infringed it. Although the Richland door has an appearance similar to the prior art, the similarity arises in comparison of the front view of the accused door and the prior art. As noted before, however, the CRP–10 door has visible hinges in the front view, while neither the Richland door nor the '718 patent design has such hinges. Additionally, many of the differences between the prior art and the claimed design appear on the back panel. On the Richland door, unlike the prior art, the back panel is identical to the claimed design. Thus, not only are the front features of the Richland door similar to the '718 patent, but the rear features are also similar. Accordingly, a reasonable jury could have consistently concluded that the Richland door infringed the '718 patent and that the CRP–10 door and end panel did not anticipate it. The jury could have found no anticipation because of the differences in the rear panels of the prior art and the claimed designs. Then, the jury could have found infringement because the Richland door has a rear design strikingly similar to the claimed design.

### III.

■ Although the jury found that Yorktowne's infringement was willful, the district court declined to award Door–Master attorney fees. This court reviews the district court's denial of attorney fees under 35 U.S.C. § 285 (1994) for an abuse of discretion. *Va. Panel Corp. v. MAC Panel Co.*, 133 F.3d 860, 867, 45 USPQ2d 1225, 1230 (Fed.Cir.1997).

Based on its observations at trial, the district court concurred with Yorktowne's assertions that it had made an investigation of the '718 patent, even if that investigation ultimately proved to be insufficient. Moreover, the district court found that the case presented a close call in several important respects. Based on these findings, the district court concluded that the case was not exceptional under § 285.

In making these findings, the district court may have reweighed some evidence that the jury already considered. However, the district court may reweigh evidence in deciding whether the case is exceptional so long as the court's findings do not conflict with the jury's findings. *Jurgens v. CBK, Ltd.*, 80 F.3d 1566, 1572, 38 USPQ2d 1397, 1402 (Fed.Cir.1996) (stating that, although the district court could not exercise

its discretion based on findings in direct conflict with jury findings, "a trial court many times has discretion to weigh the closeness of the case and the scope of the infringer's investigation in deciding whether to increase a damages award"). The district court's findings are neither in conflict with the jury's findings nor clearly erroneous, and they form a sufficient basis for the district court to exercise its discretion in declining to award attorney fees. *See Va. Panel,* 133 F.3d at 867 ("These factors, most notably the closeness of the case, justify the court's decision not to award attorney fees.").

## CONCLUSION

The district court correctly declined to enter judgment as a matter of law, thereby allowing the jury's findings of validity and infringement to stand. Moreover, the district court did not abuse its discretion in declining to award attorney fees. This court therefore affirms.

## COSTS

Each party shall bear its own costs.

*AFFIRMED*