Charles E. BENEDICT,
et al., Plaintiffs,

v.

GENERAL MOTORS CORPORATION
and Delphi Automotive Systems
L.L.C., Defendants.

No. 4:00CV483–RH.

United States District Court,
N.D. Florida,
Tallahassee Division.

Jan. 15, 2002.

William Howard Davis, Esq, Wadsworth & Davis, Tallahassee, FL, Robert Greenspoon, Esq, Joseph Hosteny, Esq, Raymond P Niro, Esq, Paul C Gibbons, Esq, Niro Scavone Haller Etc, Chicago, IL, for plaintiffs.

F Townsend Hawkes, Esq, Carlton Fields Ward Etc, Tallahassee, FL, Ralph Benjamine Reid, Esq, Carlton Fields PA, Miami, FL, Ernie L Brooks, Esq, Thomas A Lewry, Esq, John E Nemazi, Esq, Thomas W Cunningham, Esq, Frank A Angileri, Esq, Brooks & Kushman, Southfield, MI, Charles Everett Boyd, Esq, Ervin Varn Jacobs Etc, Thomas M Ervin, Esq, Ervin Varn Jacobs Etc, Tallahassee, FL, Binal J Patel, Esq, Matthew P Becker, Esq, Banner & Witcoff Ltd, Charles W Shifley, Esq, Banner & Witcoff Ltd, Chicago, IL, for defendants.

### *ORDER GRANTING SUMMARY JUDGMENT*

HINKLE, District Judge.

This is a patent infringement action. The undisputed evidence establishes that the plaintiff was not the first inventor of the system at issue; instead, a prior inventor made the system in this country and had not abandoned, suppressed or concealed it, thus rendering the patent invalid under 35 U.S.C. § 102(g). I grant defendants' motion for summary judgment on this basis.

### I

### *Background*

Plaintiff Charles E. Benedict and others with whom he was working conceived in June or July 1994 an automated daytime running light system for surface transport vehicles, that is, cars and trucks.[1] Dr.

---

1. For convenience, I will refer in this order to Dr. Benedict to cover also his co-workers; their involvement and respective roles is of no importance to the issues now before the court. Nor will I refer separately to plaintiff

Benedict arranged to have the invention built and, on August 1, 1995, applied for the patent at issue.[2] On March 25, 1997, Dr. Benedict was issued United States Patent 5,614,788 ("the '788 patent").

A precise description of the invention is not necessary to this opinion. A somewhat imprecise description is that if the invention is installed in a vehicle and has not been manually overridden, then (1) the vehicle's navigational lights (that is, its ordinary headlights and taillights) automatically are on when it is dark or when the vehicle's windshield wipers are on, and (2) at other times the vehicle's daytime running lights (consisting of high beam navigational lights at reduced power) are on.

Defendant General Motors Corporation manufactures vehicles. Many GM models have automated daytime running light systems that, according to Dr. Benedict, infringe the '788 patent. Defendant Delphi Automotive Systems L.L.C. supplies the allegedly infringing products to GM for incorporation into its vehicles.

General Motors has filed three separate motions for summary judgment. Only one need be addressed. That motion asserts that the patent on which plaintiffs base their claim is invalid under 35 U.S.C. § 102(g).[3]

Automatic Lightswitch, L.L.C., an assignee of the patent.

2. The August 1, 1995 application was a continuation in part of an application submitted January 31, 1995.

3. GM's other motions assert first that the patent is invalid because of inequitable conduct—the failure to disclose that the idea for the invention allegedly came not from the inventors listed in the patent application but from another—and alternatively that GM's vehicles do not infringe the patent when the claims are properly construed. Neither motion would support entry of summary judgment.

## II

### *Invalidity of the Patent Under § 102(g)*

Patents are presumed valid. Nonetheless, a party accused of infringement may prevail by showing the patent is invalid under 35 U.S.C. § 102(g). Under that section, an applicant is not entitled to a patent on an invention if "before such person's invention thereof, the invention was made in this country by another inventor who has not abandoned, suppressed, or concealed it." A party asserting invalidity on this basis must establish the assertion by clear and convincing evidence. *See Dow Chemical Co. v. Astro-Valcour, Inc.*, 267 F.3d 1334, 1339 (Fed. Cir.2001); *Apotex USA, Inc. v. Merck & Co.*, 254 F.3d 1031, 1037–38 (Fed.Cir.2001).

### A

### *GM's Prior Invention*

This record establishes by undisputed, clear and convincing evidence that General Motors conceived its automated daytime running light system by January 1991 and began the process of having it included in Cadillac models then under development,[4] that at GM's behest a Delphi employee designed software for the system in March 1993,[5] that a GM contractor built and tested the system by August 1993,[6] and that GM installed an operational system in a prototype vehicle by February 1994.[7] All of this occurred before Dr.

4. *See* Memorandum of Matthew Darin dated January 29, 1991 (document 113 exhibit F).

5. *See* Declaration of James Beckley (document 113 exhibit L).

6. *See* Engineering Test Report approved by Matthew Darin dated August 2, 1993 (document 113 exhibit I).

7. *See* 1996 Cadillac Product Description dated December 6, 1993 (document 113 exhibit R) and Electrical Function Check Sheet dated February 4, 1994 (document 113 exhibit Q).

Benedict invented his own automated daytime running light system; General Motors, not Dr. Benedict, was the first inventor of this system.

Dr. Benedict asserts, however, that there was nobody involved in GM's development of its system who qualifies as "another inventor," because, Dr. Benedict says, no one person followed the project through from conception to embodiment in an actual vehicle, appreciating that the invention actually worked. But this argument does not save Dr. Benedict's patent, for two reasons. First, the record is to the contrary; at least one GM engineer was involved from conception to implementation sufficiently to qualify as an inventor under any definition.[8] Second, and more importantly, a corporation may act through multiple individuals to make an invention; there is simply no basis for the assertion that although GM conceived and installed its system in a working vehicle before Dr. Benedict invented his system, GM lost its priority because it acted through multiple individuals assigned different roles in the process.

■ Nor does it matter, for purposes of the current summary judgment motion, that there are differences between Dr. Benedict's system and GM's system. As has long been said, "[t]hat which infringes, if later, would anticipate, if earlier." *Door–Master Corp. v. Yorktowne, Inc.*, 256 F.3d 1308, 1312 (Fed.Cir.2001), *quoting Peters v. Active Mfg. Co.*, 129 U.S. 530, 537, 9 S.Ct. 389, 32 L.Ed. 738 (1889). For purposes of its § 102(g) summary judgment motion, GM has accepted plaintiffs' assertion that its accused products infringe Dr. Benedict's patent; for purposes of this motion, no further showing of identity between the parties' respective inventions is required.

This is conclusively established by *Vanmoor v. Wal–Mart Stores, Inc.*, 201 F.3d 1363 (Fed.Cir.2000), and *Evans Cooling Systems, Inc. v. General Motors Corp.*, 125 F.3d 1448 (Fed.Cir.1997). In each of these infringement actions, the defendant asserted invalidity of the patent at issue on the grounds that the invention had been "on sale" in this country more than a year prior to the patent application. *See* 35 U.S.C. § 102(b). Each defendant asserted its product did not infringe but sought summary judgment under § 102(b) and accepted the assertion of infringement solely for purposes of the summary judgment motion. The Federal Circuit held no further showing of identity of the plaintiff's and defendant's products was required; plaintiff's assertion of infringement settled the matter for purposes of the § 102(b) motion.

Although *Vanmoor* and *Evans* involved § 102(b), their logic is equally applicable to claims of invalidity under § 102(g). *Vanmoor* and *Evans* establish that when a patent holder's entire claim is that an accused product infringes the patent, then, for purposes of determining on motion for summary judgment whether the patent is invalid because the accused product was earlier-invented or earlier-on-sale, no further showing of identity of the patented and accused products is required. *Vanmoor* and *Evans* each declared the patent at issue invalid, even though the defendant in each case also had asserted, alternatively, that its product did not infringe. That is precisely the situation in the case at bar.

General Motors thus has met its burden of establishing by clear and convincing evidence that before Dr. Benedict invented his system, "the invention was made in this country by another inventor." 35 U.S.C. § 102(g).

---

8.  GM personnel with knowledge of the invention included, at least, Matthew Darin (*see* Document 113, Exhibits F & I) and James Beckley (*see* Document 113, Exhibit L).

## B

### *"Abandoned, Suppressed, or Concealed"*

That leaves for consideration only the issue of whether General Motors "abandoned, suppressed, or concealed" its earlier invention within the meaning of § 102(g). I hold that it did not. From the time it conceived the system in 1991, until it marketed the system in this country in June 1995, General Motors never wavered in its resolve to bring the system to market. The system was not developed in time for installation in 1994 models (as originally suggested in 1991), but the system was installed in certain 1995 models marketed in Canada (where daytime running lights were required by law), and in certain 1996 models that were marketed in the United States beginning in June 1995. The time from the 1991 conception of the system to its installation in vehicles available on the market in the United States in 1995 was consistent with the time ordinarily and reasonably involved in product development and marketing in this industry.[9]

That this course of conduct does not constitute abandonment, suppression or concealment is established by two dispositive decisions, *Dow Chemical Co. v. Astro–Valcour, Inc.*, 267 F.3d 1334 (Fed.Cir. 2001), and *Checkpoint Systems, Inc. v. United States Int'l Trade Comm'n*, 54 F.3d 756 (Fed.Cir.1995). In each of these cases, a patent was invalidated under § 102(g), on the grounds that the patented invention had first been invented by another. In each instance, the earlier inventor chose not to seek a patent and made no disclosure of the invention other than by bringing the invention to market, a process that required two and one-half years in *Dow* and four years in *Checkpoint. Dow* and *Checkpoint* are squarely on point and fatal to Dr. Benedict's claims in the case at bar.

Indeed, the Federal Circuit's discussion in *Checkpoint* could as easily have been written for the case at bar. The court said:

> One way a prior inventor may avoid the disqualifying effect of § 102(g) is by promptly filing a patent application claiming the invention. In the usual context of an interference proceeding, each inventor involved in the proceeding will have filed a patent application, one of which may have matured into a patent. However, § 102(g) is applicable in other contexts as well, such as when it is asserted as a basis for invalidating a patent in defense to an infringement suit. *See, e.g., Amgen, Inc. v. Chugai Pharmaceutical Co.*, 927 F.2d 1200, 18 USPQ2d 1016 (Fed.Cir.), *cert. denied*, 502 U.S. 856, 112 S.Ct. 169, 116 L.Ed.2d 132 (1991); *New Idea Farm Equipment Corp. v. Sperry Corp.*, 916 F.2d 1561, 16 USPQ2d 1424 (Fed.Cir.1990) .... If the prior inventor's activities following completion of the invention do not evidence abandonment, suppression, or concealment, § 102(g) will bar a later inventor from obtaining a patent. *In cases in which an invention is disclosed to the public by commercialization, courts have excused delay upon proof that the first inventor engaged in reasonable efforts to bring the invention to market.* See, e.g., Engelhard Corp. v. M.C. Canfield Sons, 13 USPQ2d 1561, 1564–65, 1989 WL 418547 (D.N.J.1989) ("[T]he company's delay was within the realm of 'reasonable business practices.' "); *Refac Elecs. Corp. v. R.H. Macy & Co.*, 9 USPQ2d 1497, 1506, 1988 WL 93835 (D.N.J.1988)("The pivotal issue ... is whether the 'nature and tempo' of [the] activities between the initial invention/reduction-to-practice and ultimate market distribution are in accord with

---

**9.** See Declaration of Keith Nattrass (document 113 exhibit G).

reasonable business practices...."), *aff'd mem.*, 871 F.2d 1097 (Fed.Cir. 1989). *See also Dunlop Holdings, Ltd. v. Ram Golf Corp.*, 524 F.2d 33, 36, 188 USPQ 481, 483–84 (7th Cir.1975), *cert. denied*, 424 U.S. 958, 96 S.Ct. 1435, 47 L.Ed.2d 364 (1976)("[T]he evidence clearly demonstrates that [the inventor] endeavored to market his [invention] as promptly and effectively as possible."). *Checkpoint*, 54 F.3d at 761–62 (emphasis added). Applying these principles, the Federal Circuit concluded that on the facts of that case, the earlier inventor's "delay in introducing the product into the marketplace was not unreasonable and it was therefore excused." *Id.* at 762. *Dow's* analysis was the same.[10]

*Dow* and *Checkpoint* make clear that General Motors was under no obligation to seek a patent for its invention. Nor was it under an obligation to issue a press release, publish an article in a trade journal, or otherwise disclose the invention. General Motors was free, instead, to proceed at a commercially reasonable pace to bring its invention to market, disclosing the invention only in that way, and otherwise keeping it secret.[11] As it turned out, Dr. Benedict invented the same product and chose to patent it. He was not, however, the first inventor of the product, and, to his misfortune, the first inventor had not abandoned, suppressed or concealed the invention. Dr. Benedict was not entitled to a patent and has no claim for infringement in this action.

### Conclusion

Because General Motors invented the automated daytime running light system installed in its vehicles before Dr. Benedict invented an analogous system, and because General Motors proceeded at a reasonable commercial pace to bring its system to market and did not abandon, suppress, or conceal it, Dr. Benedict's patent on his later-invented system is invalid. Accordingly,

IT IS ORDERED:

1. The motion of defendant General Motors Corporation for summary judgment under 35 U.S.C. § 102(g) (document 112) is GRANTED.

2. United States Patent 5,614,788 is hereby declared invalid.

3. The clerk shall enter judgment stating, "Plaintiffs claims are dismissed with

---

**10.** Dr. Benedict notes that in *Checkpoint*, the first inventor had been deterred from seeking a patent by his employer, who also employed the second inventor; the Federal Circuit said the employer's invocation of the "equities" as weighing against invalidation gave new meaning to "chutzpah." *Checkpoint*, 54 F.3d at 763. That was not, however, the basis for the court's § 102(g) analysis, as the discussion quoted above makes clear, and in any event there were no facts of this nature involved in *Dow*.

**11.** Dr. Benedict notes that GM stamped documents setting forth its invention (and other product development information) as confidential and took affirmative and sometimes elaborate steps to restrict access to such materials. GM clearly chose to avoid premature disclosure to competitors. But there also was no disclosure in *Checkpoint* and *Dow* except by commercialization. The holding of those cases was that that was disclosure enough. Those cases establish that merely keeping an invention confidential for the time reasonably required to bring it to market is not abandonment, suppression or concealment within the meaning of § 102(g). If the first inventor is not required to disclose the invention until it is brought to market at a reasonable pace, then it makes no difference whether, in the interim, the inventor exercises his or her prerogative not to disclose by employing elaborate procedures, or only by locking the doors, or simply by keeping his or her mouth closed. What matters is when and how the invention is made public, that it is not disclosed in the meantime, and why it is not disclosed in the meantime; how the interim non-disclosure is effected does not matter.

prejudice. United States Patent 5,614,788 is hereby declared invalid. Except to the extent they seek a declaration of invalidity of United States Patent 5,614,788, defendants' counterclaims are dismissed as moot."

4. The clerk shall provide a certified copy of this order and the judgment to:
Commissioner
United States Patent and Trademark Office
2900 Crystal Drive
Arlington, VA 22202

5. The clerk shall close the file.