**CONTESSA FOOD PRODUCTS, INC.**
**(formerly known as ZB Industries,**
**Inc.), Plaintiff–Appellee,**

v.

**CONAGRA, INC. (doing business as Singleton Shrimp Company and as Meridian Products), Meridian Seafood Products, Inc., and Ocean Duke Corporation, Defendants–Appellants.**

**No. 01–1157.**

United States Court of Appeals,
Federal Circuit.

DECIDED: March 13, 2002.

William J. O'Brien, O'Melveny & Myers LLP, of Los Angeles, CA, argued for plaintiff-appellee. With him on the brief was Jason D. Linder.

Martin J. Trupiano, Sanders & Dempsey, L.L.P., of Los Angeles, CA, argued for defendants-appellants. With him on the brief was Les J. Weinstein.

Before CLEVENGER, SCHALL, and LINN, Circuit Judges.

LINN, Circuit Judge.

Conagra, Inc., Meridian Seafood Products, Inc., and Ocean Duke Corporation (collectively, "Conagra") appeal the district court's decision granting Contessa Food Products, Inc. ("Contessa")'s motion for partial summary judgment of infringement of Contessa's design patent of a serving tray with shrimp. Because the district court improperly applied the "ordinary observer" test by limiting its analysis of infringement to the time of sale and not fully considering the underside of the tray illustrated in Figure 4 of the '612 patent, we vacate and remand for further proceedings.

## BACKGROUND

Contessa (previously known as ZB Industries, Inc.) is the assignee of U.S. Design Patent No. 404,612 ("the '612 patent") entitled "Serving Tray with Shrimp." Contessa's original application for its design of a serving tray with shrimp was

submitted on September 18, 1996. Following a restriction requirement, Contessa filed a divisional application that matured into the '612 patent, issued January 26, 1999. The single claim of the '612 patent recites, "I claim the ornamental design for a serving tray with shrimp, as shown and described."

Figures 1–3 of the '612 patent illustrate top, side, and perspective views of a circular serving tray with a circular receptacle in the center for cocktail sauce. On the tray are arranged two layers, or rows, of shrimp positioned so that each shrimp head is nearer the center, each tail is nearer the outer edge, the shrimp are lying "nested" on their sides, and the tails of the upper layer of shrimp overlap and rest upon the heads of the lower layer. The side view (Figure 3) shows that the profile of the arrangement of shrimp slopes upward toward the center of the tray, forming a "mound" of shrimp. Figures 1–3 are reproduced below.

FIG. 1

FIG. 2

FIG. 3

5

5

Figure 4 shows a bottom view of the design. No shrimp are visible from the bottom view. Figure 5 shows a cross-sectional view taken along line 5–5 of Fig-

ure 3, including a solid outline of the shrimp "mound" with cross-hatching depicting the placement of the shrimp on the partially inclined, partially stepped floor of the tray. Figures 4 and 5 are reproduced below.

FIG. 4

FIG. 5

Conagra and Contessa are competing sellers of "shrimp party platters" of the type shown in the '612 patent. After Contessa's serving trays with shrimp went on sale, Conagra developed a line of serving trays with shrimp, and during development it examined Contessa products. The resulting serving trays with shrimp were sold by Conagra in the United States. Conagra obtained at least some of the accused products from Ocean Duke, which imported the serving trays with shrimp from Thailand. Photographs of some of the accused products, submitted as exhibits on summary judgment and admittedly of poor quality, are reproduced below.

Contessa sued Conagra in the U.S. District Court for the Central District of California for infringement of the '612 patent. Following settlement discussions, the parties filed cross motions for summary judgment on the issue of infringement. The district court held a hearing on March 8, 2000, and issued its decision on April 20, 2000, granting Contessa's motion for summary judgment of infringement and denying Conagra's motion for summary judgment of noninfringement.

The district court construed the claim of the '612 patent to include "a tray of a certain design, as shown in Figures 4–5, containing shrimp arranged in a particular fashion, as shown in Figures 1–3." Applying the two-part test for design patent infringement, the court determined that an ordinary purchaser would find that the accused products were "substantially similar" to the '612 design and appropriated the "point of novelty" of the '612 patent including "the annularly arranged, overlapping shrimp, which form a mound that slopes downward from the central cup area toward the outer rim of the tray." In determining the point of novelty of the '612 patent, the district court examined several pieces of prior art and determined that the "overlapping to form a mound" feature was not found in the prior art.

The parties stipulated to entry of a Final Judgment on November 22, 2000. In the stipulation, Conagra waived any defense other than noninfringement. The stipulation also set damages at $400,000 (including attorney fees, costs and interest), but agreed to stay any award "until twenty (20) days after the earlier of (a) the issuance of mandate from an appellate court, (b) the dismissal of any appeal, or (c) the time at which no further appeal can be taken therefrom."

Conagra appeals pursuant to 28 U.S.C. § 1295(a)(1).

## DISCUSSION

 This court reviews the grant of summary judgment by the district court de novo. *Conroy v. Reebok Int'l, Ltd.*, 14 F.3d 1570, 1575, 29 USPQ2d 1373, 1377 (Fed.Cir.1994). Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). On summary judgment, the question is not the "weight" of the evidence, but instead the presence of a genuine issue of material fact concerning infringement. *Avia Group Int'l, Inc. v. L.A. Gear Calif., Inc.*, 853 F.2d 1557, 1565, 7 USPQ2d 1548, 1555 (Fed.Cir.1988).

 Determining whether a design patent is infringed requires (1) construction of the patent claim, and (2) comparison of the construed claim to the accused product. *Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1577, 36 USPQ2d 1417, 1420 (Fed.Cir.1995). In construing a design patent claim, the scope of the claimed design encompasses "its visual appearance as a whole," and in particular "the visual impression it creates." *See Durling v. Spectrum Furniture Co.*, 101 F.3d 100, 104–05, 40 USPQ2d 1788, 1791 (Fed.Cir.1996). In assessing infringement, the patented and accused designs do not have to be identical in order for design patent infringement to be found. *Braun Inc. v. Dynamics Corp. of Am.*, 975 F.2d 815, 820, 24 USPQ2d 1121, 1125 (Fed.Cir.1992). What is controlling is the appearance of the design as a whole in comparison to the accused product. *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405, 43 USPQ2d 1641, 1647 (Fed.Cir.1997).

■ Comparison to the accused product includes two distinct tests, both of which must be satisfied in order to find infringement: (a) the "ordinary observer" test, and (b) the "point of novelty" test. *See Unidynamics Corp. v. Automatic Prods. Int'l, Ltd.,* 157 F.3d 1311, 1323, 48 USPQ2d 1099, 1107 (Fed.Cir.1998). The "ordinary observer" test requires that the district court perform the inquiry set forth in *Gorham Co. v. White:*

> if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.

81 U.S. (14 Wall.) 511, 528, 20 L.Ed. 731 (1871). The "point of novelty" test is distinct from the "ordinary observer" test and requires proof that the accused design appropriates the novelty which distinguishes the patented design from the prior art. *Litton Sys., Inc. v. Whirlpool Corp.,* 728 F.2d 1423, 1444, 221 USPQ 97, 109 (Fed. Cir.1984). Although application of the "ordinary observer" and "point of novelty" tests may sometimes lead to the same result, *see Shelcore, Inc. v. Durham Indus., Inc.,* 745 F.2d 621, 628 n. 16, 223 USPQ 584, 590 n. 17 (Fed.Cir.1984), it is legal error to merge the two tests, for example by relying on the claimed overall design as the point of novelty. *See Sun Hill Indus., Inc. v. Easter Unlimited, Inc.,* 48 F.3d 1193, 1197, 33 USPQ2d 1925, 1928 (Fed.Cir.1995); *Winner Int'l Corp. v. Wolo Mfg. Corp.,* 905 F.2d 375, 376, 15 USPQ2d 1076, 1077 (Fed.Cir.1990) ("To consider the overall appearance of a design without regard to prior art would eviscerate the purpose of the 'point of novelty' approach, which is to focus on those aspects of a design which render the design different from prior art designs.").

## I. Claim Construction

■ The district court construed the sole claim of the '612 patent to mean "a tray of a certain design, as shown in Figures 4–5, containing shrimp arranged in a particular fashion, as shown in Figures 1–3." In its opinion, the district court considered and described each of the Figures in the '612 patent, and based its claim construction on the ornamental features illustrated by all of the Figures, including the arrangement of the shrimp depicted in Figures 1–3 and the shape and appearance of the tray depicted in Figures 4 and 5. In doing so, the district court properly construed the scope of the claimed invention to be its "overall ornamental visual impression, rather than . . . the broader general design concept." *OddzOn,* 122 F.3d at 1405, 43 USPQ2d at 1647. We find no error in the district court's claim construction.

## II. "Ordinary Observer" Test

Summarizing its application of the "ordinary observer" test, the district court held that "any reasonable fact finder would conclude that the competing designs are substantially similar despite the minor differences in tray structure." The district court began its analysis by observing that "Defendants' accused products are very similar in overall appearance to patent '612, including the appearance of both the shrimp arrangement and the underlying tray." However, the district court based this conclusion on photographs of the accused products in which the district court acknowledged "[t]he undersides of Defendants' trays actually are

not visible ... because they are covered by the plastic wrapping and a sticker that displays thawing instructions, ingredients, and nutritional information." The district court explained that "[t]he photographs show defendants' products as they appear for sale: the trays have shrimp on them, and the products are wrapped in plastic for freezer storage." The district court admitted that "not all of the photographs convey a clear impression of the appearance of Defendants' products," explaining that "frost on the inside or outside of the packaging of Defendants' photographed products sometimes makes it difficult to see to what extent the shrimp overlap."

By failing to conduct additional fact-finding concerning the features of the accused product missing or obscured in the submitted evidence, the district court presented two distinct questions for our review relevant to the "ordinary observer" analysis: (1) whether the district court was required to consider the ornamental features illustrated in all of the drawings of the design patent, and (2) whether the district court properly limited its analysis to those features visible at the point of sale, rather than those features visible at any time in the "normal use" lifetime of the accused product. We address each of these issues in turn.

### A. Design As A Whole Including All Figures

■ In its opinion, the district court considered a physical sample of one of the empty trays used in the accused products: "[t]he parties have submitted a sample of one of Defendants' trays, without shrimp. Jt. Ex. 101." However, the district court discussed this one physical sample only in connection with narrow features shown in Figure 5 of the '612 patent, describing

"minor structural differences" between the '612 design and the accused product. The ornamental appearance of the underside of the sample tray is not mentioned, nor is it compared to the '612 design shown in Figure 4.

■ "It has been consistently held for many years that it is the appearance of a design as a whole which is controlling in determining questions of ... infringement." *In re Rubinfield*, 47 C.C.P.A. 701, 270 F.2d 391, 395, 123 USPQ 210, 214 (CCPA 1959). Our precedent makes clear that all of the ornamental features illustrated in the figures must be considered in evaluating design patent infringement. This is because "[a] patented design is defined by the drawings in the patent, not just by one feature of the claimed design." *KeyStone Retaining Wall Sys., Inc. v. Westrock, Inc.*, 997 F.2d 1444, 1450, 27 USPQ2d 1297, 1302 (Fed.Cir.1993). In particular, in the "ordinary observer" analysis, the patented design is viewed in its entirety, as it is claimed. *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1125, 25 USPQ2d 1913, 1918 (Fed.Cir. 1993). If features appearing in the figures are not desired to be claimed, the patentee is permitted to show the features in broken lines to exclude those features from the claimed design, and the failure to do so signals inclusion of the features in the claimed design. *Door–Master Corp. v. Yorktowne, Inc.*, 256 F.3d 1308, 1313, 59 USPQ2d 1472, 1475 (Fed.Cir.2001).

In support of its conclusion that the accused and patented designs are substantially similar, the district court remarked that "we must bear in mind that the attention of the ordinary observer at the point of sale is far more likely to focus on the arrangement of shrimp than minor features of the structure of the underlying

tray, for the simple reason that the shrimp cover and obscure most structural features of the tray—a fact reflected in the '612 drawings. Jt. Ex. 1, figs. 1–3, 5." Notably absent is any consideration of Figure 4 of the '612 patent, illustrating the underside of the patented design not covered or obscured by the shrimp.

▮ Even where the district court contemplated an analysis of the features of the tray alone, Figure 4 was apparently not included:

> Even if we compared only the competing products' trays, without considering the arrangement of shrimp, we would be hard-pressed to conclude that an ordinary observer would find the products sufficiently dissimilar to prevent a finding of infringement. . . . While the tray's features are relevant to the infringement analysis—they are, after all, depicted in figure 5 of the '612 patent— they cannot, contrary to Defendants' contentions, form the entire basis for our substantial similarity analysis.

The absence of any consideration or comparison of the features of the tray depicted in Figure 4 in the district court's analysis of "the competing products' trays" reflects that the underside of the patented tray design was not part of the infringement analysis. We conclude that this omission was erroneous. We hold that the "ordinary observer" analysis is not limited to the ornamental features of a subset of the drawings, but instead must encompass the claimed ornamental features of all figures of a design patent.

## B. Visible During Normal Use

▮ The district court discounted the significance of the underside of the tray in its "ordinary observer" analysis, remarking that the underside of the tray is not visible or is at least partially obscured in the accused product at the point of sale. Throughout its opinion, the district court emphasized the features of the accused product apparent to a purchaser of the accused product at the point of sale. In discussing the declaration of Conagra witness Robert Anders, the district court opinion states "the grooves on the accused trays would be invisible to a purchaser of the frozen product, because these features would be obscured by the packaging and the shrimp," and "the arrangement of the shrimp . . . surely is the most prominent design feature of the accused products at the point of purchase." The opinion states, "the attention of the ordinary observer at the point of sale is far more likely to focus on the arrangement of shrimp," and "United States consumers . . . do not see the underlying features of Defendants' trays at the point of sale." These statements indicate that the district court limited its application of the "ordinary observer" test to the point of purchase. In the circumstances of this case, limitation of the infringement inquiry to the time of sale, rather than to the time of normal and intended use, was clear error.

▮ "It has been held repeatedly that articles which are concealed or obscure [sic] *in normal use* are not proper subjects for design patents, since their appearance cannot be a matter of concern." *In re Stevens,* 36 C.C.P.A. 1017, 173 F.2d 1015, 1016, 81 USPQ 362, 362–63 (CCPA 1949) (emphasis added). We have construed "normal use" in the design patent context to extend over "a period in the article's life, beginning after completion of manufacture or assembly and ending with the ultimate destruction, loss, or disappearance of the article." *In re Webb,* 916 F.2d

1553, 1557–58, 16 USPQ2d 1433, 1436 (Fed.Cir.1990).

In *KeyStone*, we considered infringement of a design patent directed to all faces of a construction block intended to be combined with other blocks to form a wall. 997 F.2d at 1446, 27 USPQ2d at 1298. The accused infringer argued that only the front face of the block design was ornamental and thus germane to the infringement analysis, the other features being concealed when the block is assembled as intended in a retaining wall. *Id.* at 1450, 27 USPQ2d at 1302. We rejected that argument, holding in favor of the patentee because the patented design "includes the entire retaining wall block, not solely the front face of the block after it has been incorporated in a retaining wall." *Id.* The facts of the *KeyStone* case differ from the present facts in that at the time of purchase, the features disputed in *KeyStone* were visible, whereas in the present case the features of the underside are hidden, in whole or in part. Despite such differences, the underlying principle of *KeyStone* is nonetheless apposite: for purposes of design patent infringement, the "ordinary observer" analysis is not limited to those features visible during only one phase or portion of the normal use lifetime of an accused product. *Id.* at 1450–51, 27 USPQ2d at 1302. Instead, the comparison must extend to all ornamental features visible during normal use of the product, i.e., "beginning after completion of manufacture or assembly and ending with the ultimate destruction, loss, or disappearance of the article." *Webb*, 916 F.2d at 1557–58, 16 USPQ2d at 1436.

In other contexts, we have counseled against limiting the design patent infringement analysis to the point of sale. In distinguishing the analysis of design patent infringement from that of trademark infringement, we commented:

A determination that the shape of the alleged infringing concentrate package is not visible to the consumer at the time of sale and, therefore, the consumer is unlikely to be confused by the similarity in a competitor's product is inapposite. Concluding that a purchaser is unlikely to be confused by any similarity in a competitor's product only serves to blur the otherwise clear line that exists between the test for infringement of a design patent and the "likelihood of confusion" test for infringement of a trademark.

*Unette Corp. v. Unit Pack Co.*, 785 F.2d 1026, 1029, 228 USPQ 933, 934 (Fed.Cir. 1986).

In *Door–Master Corp. v. Yorktowne, Inc.*, the accused infringer argued that the claimed design for a cabinet door and frame should be construed to exclude the rear features of the cabinet door because these features are hidden from view when the door is closed. 256 F.3d 1308, 1313, 59 USPQ2d 1472, 1475 (Fed.Cir.2001). We disagreed:

Nothing in the '718 patent indicates that the rear features are not part of the claimed design. Indeed, the '718 patent claims '[a]n ornamental design for an integrated door and frame, as shown and described.' Then FIG. 2 and part of FIG. 4 show the rear features.... In addition, the rear features are not generally concealed. After the door has been installed, the rear features may be temporarily hidden from view when the door is closed.

*Id.* Thus, we concluded that the rear features were proper bases for design protection, in part because the rear features

were visible at some time during the normal use of the product. *Id.* Likewise in the present case, the features of the underside of the tray illustrated in Figure 4 may be proper bases for design protection, because these features are visible during normal use.

Although the "ordinary observer" test of *Gorham* is formulated in terms of a hypothetical purchasing decision, nothing in *Gorham* restricts the comparison between the patented design and the accused product to features visible at the point of purchase. Rather than limiting the assessment of infringement to the point of purchase, the *Gorham* test applies an objective frame of reference, the hypothetical purchasing decision to be made by an ordinary observer, to all ornamental features visible at any time during the normal use of a product. One must compare the ornamental features of the patented design, as shown in all of the drawings, to the features of the alleged infringing product visible at any time during normal use of the product and assess "if the resemblance [at such point] is such as to deceive ... an ordinary observer, giving such attention as a purchaser usually gives, ... inducing him to purchase one supposing it to be the other." *Gorham*, 81 U.S. (14 Wall.) at 528. Thus, we hold that the "ordinary observer" analysis is not limited to those features visible at the point of sale, but instead must encompass all ornamental features visible at any time during normal use of the product.

In this case, the normal use of the accused product extends beyond the time of purchase. The serving tray with shrimp sold by Conagra is intended to be purchased by consumers who remove the packaging obscuring the underside of the tray prior to consuming the shrimp. Because the underside of the tray is fully revealed when the packaging is removed and thereafter is visible to the consumer during use of the accused product, it was error for the district court to discount and overlook Figure 4 of the '612 patent, illustrating the underside of the tray.

The failure of the district court to consider the implications of the ornamental features visible during normal use, including the ornamental features of all Figures of the '612 patent, in comparison to the corresponding features of the accused products necessitates that we vacate the district court's summary judgment of infringement and remand the case to the district court for further consideration.

## C. Remand Instructions

On remand, the district court is instructed to consider features, in addition to the arrangement of the shrimp on the top of the tray, regarding the underside of each of the accused products visible after the packaging is removed. The overall features of the top, side and underside of the accused products must be compared with the patented design as a whole as depicted in all of the drawing figures to determine infringement. As the district court recognized, our precedent in making the required comparison "counsels against measuring the similarity of designs from the viewpoint of experts in design." *Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co.*, 162 F.3d 1113, 1117, 48 USPQ2d 1767, 1769 (Fed.Cir.1998). Thus, whether the patented design and the accused product are "substantially the same" is to be determined from the viewpoint of "the eyes of men generally, of observers of ordinary acuteness, bringing to the examination of the article upon which the design has been placed that degree of observation

which men of ordinary intelligence give." *Id.* (citing *Gorham,* 81 U.S. (14 Wall.) at 528). Analysis under the "ordinary observer" test is to be conducted with the "ordinary observer" and not the expert designer in mind.

### III. "Point of Novelty" Test

In light of our disposition of the "ordinary observer" test, we decline to address the "point of novelty" test.

### CONCLUSION

Because the district court did not fully consider the underside of the tray illustrated in Figure 4 of the '612 patent when applying the "ordinary observer" test, we vacate the decision granting summary judgment of infringement and remand for further proceedings consistent herewith.

*VACATED AND REMANDED.*