BEVIN BROS. MFG. CO. v. STARR BROS. BELL CO. et al.

(Circuit Court, D. Connecticut. February 22, 1902.)

1. PATENTS—DESIGNS—INVENTION.

The fundamental question in determining the validity of a design patent is whether the inventive faculty has been exercised to produce something which is original and pleasing to the eye.

2. SAME—IDENTITY OF DESIGNS.

In design patents, the test of identity on questions of anticipation and infringement is the eye of the ordinary observer; and in determining such question the court may avail itself of such common knowledge as is possessed by the general public.

3. SAME—NOVELTY—DESIGN FOR BELL.

The Scranton design patent, No. 33,142, for a design for a bell, is void for lack of patentable novelty. Also held not infringed.

In Equity. Suit for infringement of letters patent No. 33,142, granted to Frederick A. Scranton August 28, 1900, for a design for a bell. On final hearing.

Chas. L. Burdett, for complainant.
Simonds & Hart, for defendants.

TOWNSEND, District Judge. At final hearing on bill and answer, defendants deny the validity and their infringement of complainant's patent, No. 33,142, granted to Frederick A. Scranton August 28, 1900, for a design for a bell. The specification says:

"As shown in the drawings, the leading or material feature of my design consists of a body part, a, in the form of an oblate spheroid, and having at one end a circular base, b, joined with the body portion, a, by a smaller neck portion, c, which flares out from the point of union with the body part to its point of connection with the base, b. The body portion of the bell, in the form of an oblate spheroid, has its end approaching a form nearly flat, as shown in the drawings."

The drawings show such an oblate spheroid and neck, and the claim covers "a bell as herein shown and described."

The complainant and defendants are located at East Hampton, Conn., and are rival manufacturers of bells. Up to February, 1901, complainant had sold over 1,700 embodiments of its patent. The bells in question are intended for use on automobiles. The patented design is unlike any other form of automobile bell previously produced.

In support of their denial of patentable novelty, defendants claim to have shown prior designs for door knobs and bells and other devices which so closely resemble the form shown in the patent as to deprive it of all claim to novelty. The answers to defendants' contention as to patentable novelty are as follows: (1) The uncertain and questionable character of the testimony as to the prior existence of the alleged an-

ticipating exhibits; (2) differences of ratio between neck and base in the alleged anticipations and in the patented design, and other differences in configuration; (3) differences in construction and character of use. The objections are well founded in fact as to several, but not all, of the exhibits. Among others, defendants have an old tea bell, which is substantially the same as that of the patent, except that the drawing of the patent shows a central bead on the oblate spheroid. The defense is well taken that the patentee has not only carefully avoided all mention of or reference either to said bead in his specification or claim, or to the fact that the spheroid is in two parts, but, as if out of abundant caution, has specified that "the leading or material feature" is the body portion, "in the form of an oblate spheroid," and the neck.

But irrespective of prior patents and other sufficiently proven exhibits, the defense of lack of patentable novelty stands on a broader foundation than the proof produced in court. In design patents the test of identity, on questions of anticipation and infringement, is the eye of the ordinary observer. And in determining this question the court may avail itself of such common knowledge as is possessed by the general public. The fundamental question is whether the inventive faculty has been exercised to produce anything which is original and pleasing to the eye. Gorham Co. v. White, 14 Wall. 511, 20 L. Ed. 731; Manufacturing Co. v. Odell (D. C.) 18 Fed. 321; Wooster v. Crane, 2 Fish. Pat. Cas. 583, Fed. Cas. No. 18,036; Dukes v. Bauerle (C. C.) 41 Fed. 778; Cahoone-Barnett Mfg. Co. v. Rubber & Celluloid Harness Co. (C. C.) 45 Fed. 582. The eyes of the court cannot be closed to the fact that in the court room itself are electric light fixtures, placed there long before the date of the patent, which show a sphere with a neck and rim so nearly identical with those of the patent that the difference is a mere matter of immaterial proportions. Nor can the andirons of our grandfathers, the door knobs from time immemorial, the old chime bell of the sleigh, the conventional cuspidor, be overlooked. The court must take judicial notice of the oblate spheroid and neck common to the whole field of everyday arts, and must hold that this design is merely a double use,—is, at most, the adaptation of an old form to a new purpose. The defense of want of patentable novelty is sustained.

On the question of noninfringement, as well as patentable novelty, defendants refer to the door knob,—Exhibit No. 5. It is objected that this exhibit is not sufficiently proved, but I think pages 249 and 256a of the Russell & Erwin catalogue have not been successfully discredited. Complainant's oblate spheroid is substantially the same as this door knob; the only material difference in shape being that between the neck portions, for which reason plaintiff's patent should be limited to a design having the neck portion which flares substantially like that shown in the patent. The shape of defendants' bell differs from plaintiff's more widely than plaintiff's differs from the door knob, and therefore defendants' construction does not infringe the patent.

Let the bill be dismissed.