**In re John D. WEBB, Jr., Roy Y. Hori, and George E. Simpson.**

**No. 90–1176.**

United States Court of Appeals, Federal Circuit.

Oct. 11, 1990.

Michael H. Baniak, Willian Brinks Olds Hofer Gilson & Lione, Chicago, Ill., argued, for appellants. With him on the brief, was Sandra A. Sellers, Willian Brinks Olds Hofer Gilson & Lione, Washington, D.C.

Nancy C. Slutter, Associate Sol., Office of the Sol., Arlington, Va., argued, for appellee. With her on the brief, was Fred E. McKelvey, Sol.

Before ARCHER, PLAGER, and CLEVENGER, Circuit Judges.

CLEVENGER, Circuit Judge.

This is an appeal from a decision of the U.S. Patent and Trademark Office Board of Patent Appeals and Interferences ("Board") affirming the final rejection of the sole claim of appellants' ("Webb") U.S. Design Patent Application Serial No. 833,-470. The claim for "[t]he ornamental design for a grooved femoral hip stem prosthesis as shown and described," was "rejected as being unpatentable under 35 U.S.C. § 171 as being directed to non-statutory subject matter." The design can be appreciated from Figure 2 of the application reproduced below.

The Board affirmed the Examiner's holding that the design, "clearly not intended to be visible in actual use," "is not proper subject matter under 35 U.S.C. § 171." The Board's decision creates a *per se* rule that a design for an article which will not be visible in the final use for which the article was created is non-statutory subject matter even if the design is observed at some stage of the article's commercial life. We reverse and remand.

**FIG. 2**

I

Hip stem prostheses of the design invented by Webb are metallic implants that are generally used by orthopedic surgeons to supplant the functioning of a diseased or broken femur, near the hip, where the femur is joined to the pelvis. According to Webb, and not disputed by the Patent and Trademark Office ("PTO"), surgeons are made aware of differing brands and types of prostheses through advertisements in professional journals and through trade shows, where the prostheses themselves are displayed. Advertisements that were put in the record prominently and visually display the features of the prostheses. Furthermore, the applicant's agent submitted that "an implant's appearance is observed by potential and actual purchasers, surgeons, nurses, operating room staff, and other hospital personnel." After purchase, the prosthesis is surgically implanted into a patient's body where the

implant is to remain indefinitely. Neither party disputes that, after implantation, the prosthesis is no longer visible to the naked eye.

## II

In the Initial Office Action, the Examiner rejected the claim "under 35 U.S.C. 171 for the reason that the instant article is believed to be devoid of ornamentality, as comprehended by the statute. Articles of this type are not only completely hidden in use, but are devised to satisfy purely structural and mechanical requirements as well." The Examiner thus found the article to be unpatentable subject matter for two reasons: because it was purely functional and because it was concealed in normal use. In reply, Webb argued that the design was not purely functional since a "prosthetic implant could utilize the mechanical/utilitarian features/concepts ... and have a totally different visual appearance." Webb also argued that the "visual appearance can certainly draw attention to a particular implant at a trade show or in advertising" and, therefore, the design was visible during normal use.

In the Final Office Action, the Examiner stated:

Applicant argues that, while the design is functional in nature, it is still ornamental. While this may be true, it has been held that articles which are hidden in use are not proper subject matter for design patents.

. . . .

... There is not sound reason or logic for "normal use" to include the repair, service, replacement, sale or display of the article which incorporates the claimed design. While such occasions are of course "normal" in the sense of commonplace or routine occasions of an item's use, for patent purposes "normal use" should be limited to the ordinary functioning for which it was designed, not incidents in the article's life which are not integral to its function or purpose. Items are not designed for sale, display, replacement or repair.

The Board did not address the issue of functionality of the claimed design that had been raised in the Examiner's Initial Action. It affirmed the Examiner's final rejection of the claim as unpatentable subject matter because the article was not visible in what the Board considered to be its normal or intended use.

## III

As a preliminary matter, we must determine whether the issue of the design's functionality is properly before this Court as suggested by the PTO in its brief and as strongly asserted at oral argument. The PTO cites 37 C.F.R. § 1.196(a) for the proposition that the "decision" of an examiner is incorporated into the "decision" of the Board which we may review. Subsection 1.196(a), in pertinent part, reads:

The affirmance [by the Board] of the rejection of a claim on any of the grounds specified constitutes a general affirmance of the decision of the examiner on that claim, except as to any ground specifically reversed.

■ Assuming that the *de jure* incorporation effected by § 1.196(a) is a proper exercise of the Commissioner's regulatory authority, 35 U.S.C. § 6(a) (1988), we must first decide what constitutes a "decision" of an examiner for the purposes of § 1.196(a) and, thereafter, whether the "decision" of the Examiner in this case included the grounds of functionality. The Examiner initially rejected Webb's design claim as functional, but that rejection was not reiterated when the rejection was made final. The regulations require that, "[i]n making such final rejection, the examiner shall repeat or state all grounds of rejection then considered applicable in the case, clearly stating the reasons therefor." 37 C.F.R. § 1.113(b). It follows, then, that an examiner's final rejection, which precipitates the statutory right to appeal to the Board, 35 U.S.C. § 134 (1988), constitutes the "decision" of an examiner for purposes of § 1.196(a). *See In re Bush,* 296 F.2d 491, 492, 49 CCPA 752, 131 USPQ 263, 264 (1961).

■ The Examiner's final rejection did not clearly specify functionality as a ground for rejection. We therefore read the Examiner's decision to have accepted Webb's argument, namely that the article in question did not warrant rejection on functionality grounds. Since a rejection for functionality was not a part of the decision appealed to the Board by Webb, that ground cannot be incorporated into the Board's decision by operation of 37 C.F.R. § 1.196(a). Consequently, the issue of functionality is not before us. "[W]e can express no opinion because we are a court of *review* and do not pass on issues not raised...." *In re Zahn*, 617 F.2d 261, 269, 204 USPQ 988, 996 (CCPA 1980).

## IV

■ The issuance of design patents is limited by statute to designs that are ornamental. 35 U.S.C. § 171 (1988). Our predecessor court has affirmed the rejection of design applications that cannot be perceived in their normal and intended uses. For instance, the Court of Customs and Patent Appeals affirmed the rejection of a design claim for a vent tube placed in the wall of a frame house, stating that "[i]t is well-settled that patentability of a design cannot be based on elements which are concealed in the normal use of the device to which the design is applied." *In re Cornwall*, 230 F.2d 457, 459, 43 CCPA 824, 826, 109 USPQ 57, 58 (1956). Even earlier, that court affirmed the rejection of a design claim for a vacuum cleaner brush. *In re Stevens*, 173 F.2d 1015, 36 CCPA 1017, 81 USPQ 362 (1949). There the court noted:

> [A]rticles which are concealed or obscure are not proper subjects for design patents, since their appearance cannot be a matter of concern.... Almost every article is visible when it is made and while it is being applied to the position in which it is to be used. Those special circumstances, however, do not justify the granting of a design patent on an *article such as here under consideration* which is always concealed in its normal and intended use.

*Id.* at 1016, 36 CCPA at 1019, 81 USPQ at 363 (emphasis added).

■ We read those cases to establish a reasonable general rule that presumes the absence of ornamentality when an article may not be observed. This is a sound rule of thumb, but it is not dispositive. *See Larson v. Classic Corp.*, 683 F.Supp. 1202, 1202–1203, 7 USPQ2d 1747, 1747 (N.D.Ill. 1988). In each case, the inquiry must extend to whether at some point in the life of the article an occasion (or occasions) arises when the appearance of the article becomes a "matter of concern."

■ Here, we read the Board's decision to have established a *per se* rule under § 171 that if an article is hidden from the human eye when it arrives at the final use of its functional life, a design upon that article cannot be ornamental. The rule in *Stevens* does not compel the Board's decision. Instead, *Stevens* instructs us to decide whether the "article such as here under consideration"—a hip stem implant—"is always concealed in its normal and intended use." The issue before us, then, is whether "normal and intended use" of these prosthetic devices is confined to their final use.

## V

■ Although we agree that "normal and intended use" excludes the time during which the article is manufactured or assembled, it does not follow that evidence that an article is visible at other times is legally irrelevant to ascertaining whether the article is ornamental for purposes of § 171. Contrary to the reasoning of the Examiner in this case, articles *are* designed for sale and display, and such occasions are normal uses of an article for purposes of § 171. The likelihood that articles would be observed during occasions of display or sale could have a substantial influence on the design or ornamentality of the article. "The law manifestly contemplates that giving certain new and original appearances to a manufactured article may enhance its salable value...." *Gorham Co. v. White*, 81 U.S. (14 Wall.) 511, 525, 20 L.Ed. 731 (1871).

■ In short, we construe the "normal and intended use" of an article to be a

period in the article's life, beginning after completion of manufacture or assembly and ending with the ultimate destruction, loss, or disappearance of the article. Although the period includes all commercial uses of the article prior to its ultimate destination, only the facts of specific cases will establish whether during that period the article's design can be observed in such a manner as to demonstrate its ornamentality.

 It is possible, as in *Stevens*, that although an article may be sold as a replacement item, its appearance might not be of any concern to the purchaser during the process of sale. Indeed, many replacement items, including vacuum cleaner brushes, are sold by replacement or order number, or they are noticed during sale only to assess functionality. In such circumstances, the PTO may properly conclude that an application provides no evidence that there is a period in the commercial life of a particular design when its ornamentality may be a matter of concern. However, in other cases, the applicant may be able to prove to the PTO that the article's design is a "matter of concern" because of the nature of its visibility at some point between its manufacture or assembly and its ultimate use. Many commercial items, such as colorful and representational vitamin tablets, or caskets, have designs clearly intended to be noticed during the process of sale and equally clearly intended to be completely hidden from view in the final use. Here, for example, there was ample evidence that the features of the device were displayed in advertisements and in displays at trade shows. That evidence was disregarded by the Board because, in its view, doctors should select implants solely for their functional characteristics, not their design. It is not the task of the Board to make such presumptions.

The decision of the Board is

REVERSED and the case is REMANDED.