# United States Court of Appeals for the Federal Circuit

2009-1237

INTERNATIONAL SEAWAY TRADING CORPORATION,

Plaintiff-Appellant,

v.

WALGREENS CORPORATION
and TOUCHSPORT FOOTWEAR USA, INC.,

Defendants-Appellees.

George L. Pinchak, Tarolli, Sundheim, Covell & Tummino LLP, of Cleveland, Ohio, argued for plaintiff-appellant. With him on the brief were John A. Yirga, and Thomas H. Shunk, Baker & Hostetler LLP, of Cleveland, Ohio.

Mark P. Walters, Darby & Darby, P.C., of Seattle, Washington, argued for defendants-appellees.

Appealed from: United States District Court for the Southern District of Florida

Senior Judge Kenneth L. Ryskamp

# United States Court of Appeals for the Federal Circuit

2009-1237

INTERNATIONAL SEAWAY TRADING CORPORATION,

Plaintiff-Appellant,

v.

WALGREENS CORPORATION,
and TOUCHSPORT FOOTWEAR USA, INC.,

Defendants-Appellees.

Appeal from the United States District Court for the Southern District of Florida in case no. 08-CV-80163, Senior Judge Kenneth L. Ryskamp.

_____

DECIDED:  December 17, 2009

_____

Before BRYSON, CLEVENGER, and DYK, <u>Circuit Judges</u>.

Opinion for the court filed by <u>Circuit Judge</u> DYK.  Dissenting opinion filed by <u>Circuit Judge</u> CLEVENGER.

DYK, <u>Circuit Judge</u>.

Plaintiff-Appellant International Seaway Trading Corporation ("Seaway") filed suit against Walgreens Corporation ("Walgreens") and Touchsport Footwear USA, Inc. ("Touchsport") claiming infringement of Seaway's patents, U.S. Design Patents Nos. D529,263 ("the '263 patent"), D545,032 ("the '032 patent"), and D545,033 ("the '033 patent").  The district court granted summary judgment for defendants, finding that the claims of the asserted patents were invalid under 35 U.S.C. § 102 as anticipated by a

patent assigned to Crocs, Inc. ("Crocs"), U.S. Design Patent No. D517,789 ("the Crocs '789 patent"). Int'l Seaway Trading Corp. v. Walgreens Corp., 599 F. Supp. 2d 1307, 1319 (S.D. Fla. 2009).

On appeal, Seaway contends that the district court erred by basing its invalidity determination solely on the ordinary observer test and by failing to apply the point of novelty test. We agree with the district court that the point of novelty test should not be utilized for anticipation, and that only the ordinary observer test applies. However, while we conclude that the exterior appearance of the patented designs would be substantially similar to the prior art in the eyes of an ordinary observer, we conclude that the district court erred in failing to compare the insoles of the patents-in-suit with the prior art from the perspective of the ordinary observer. Accordingly, we affirm-in-part, vacate-in-part, and remand.

## BACKGROUND

Plaintiff-Appellant Seaway is an Ohio corporation that acts as a buyer's agent and/or importer of footwear to mass merchandise retailers, as well as to footwear, apparel, and sporting goods stores. Seaway also creates its own shoe and boot designs and pursues design patents for them. Defendant-Appellee Walgreens is an Illinois corporation with retail drug stores across the country that sell footwear, among other products. Defendant-Appellee Touchsport is a California corporation that, like Seaway, serves as a buyer's agent and/or importer of footwear to retailers, including Walgreens.

Seaway's '263, '032, and '033 patents (collectively "the patents-in-suit") claim designs for casual, lightweight footwear, which are typically referred to as "clogs." The

'263 patent application was filed on February 18, 2005, and issued on October 3, 2006. The '032 and '033 patents were filed as continuations-in-part of the '263 patent in February 2006, and both issued on June 26, 2007. It is undisputed that the '032 and '033 patents are "substantially the same as the '263 patent design" except that the heel strap is in a forward position overlying a portion of the clog upper in the '032 patent and that the heel strap is not part of the claimed design for the '033 patent.

A single Patent Office Examiner examined and allowed each of the three patents-in-suit. During prosecution of the '263 patent application, the examiner considered and found the '263 patent design patentable over: (a) four pages from the website of Crocs that depicted various models of Crocs clogs, including the Beach model clog; (b) five pages of photographs of the Crocs Beach model clog; and (c) a December 2002 archival version of the Crocs website, depicting various views of a Crocs clog. In the examination of the '263 patent application, the examiner did not have the benefit of the Crocs '789 patent, which depicted the Crocs Beach model clog, even though the '789 patent issued before the examination was concluded. For the '032 and '033 patent applications, the examiner considered and found the '032 and '033 designs patentable over the references considered during the '263 prosecution as well as the '789 patent.

On February 15, 2008, Seaway filed a complaint against Walgreens and Touchsport in the United States District Court for the Southern District of Florida, alleging that they were infringing its '263, '032 and '033 patents. Seaway asserted that Touchsport had imported and continued to import shoes that infringed the Seaway patents and that Walgreens had sold and continued to sell the allegedly infringing

shoes. Walgreens and Touchsport filed a motion for summary judgment on June 24, 2008, contending that Seaway's patents were invalid as anticipated under 35 U.S.C. § 102(a) & (e) by the Crocs Beach and Cayman model clogs and/or the Crocs '789 patent, or as obvious under 35 U.S.C. § 103 in view of the Crocs Beach and Cayman model clogs and/or the Crocs '789 patent. Figures depicting the design in the '789 patent, and the design in the '263 patent, which is representative of the designs in the '032 and '033 patents, are set forth below.

Figure 1 in the '789 Patent



Figure 2 in the '263 Patent



On January 22, 2009, the district court granted summary judgment of anticipation, finding that the three Seaway patents were anticipated by the Crocs '789 patent. Int'l Seaway Trading Corp., 599 F. Supp. 2d at 1317. The district court held that the ordinary observer test was the sole test of design patent invalidity under 35 U.S.C. § 102. Id. In granting summary judgment, the district court considered and compared the exterior portions of the designs of the patents-in-suit, but not the insoles of the designs, to the prior art. Id. at 1318-19. The district court concluded that

comparison of the insoles was not required, holding "that the law requires a court to consider only those portions of the product that are visible during normal use, regardless of whether those portions are visible during the point of sale." Id. at 1315. The court then explained its rationale:

> When a shoe is in use, it's [sic] insole is, obviously, hidden by the user's foot. The sole of the shoe, however is sometimes visible while a person is sitting or walking. As such, this Court will not consider any aspects of the insoles of the shoes, but will consider the sole of the shoes as those are visible during use.

Id. The district court did not determine whether the patents-in-suit were invalid as obvious.

Seaway timely appealed, and we have jurisdiction under 28 U.S.C. § 1295(a)(1). Because this appeal is from a grant of summary judgment, we view the record in the light most favorable to the non-moving party (here Seaway). OddzOn Prods., Inc. v. Just Toys, Inc., 122 F.3d 1396, 1401 (Fed. Cir. 1997). Anticipation is a question of fact. Akzo N.V. v. U.S. Int'l Trade Comm'n, 808 F.2d 1471, 1479 (Fed. Cir. 1986).

DISCUSSION

I

Seaway first contends that the district court should have applied the point of novelty test in addition to the ordinary observer test during its anticipation analysis. Our decision in Egyptian Goddess, Inc. v. Swisa, Inc., 543 F.3d 665 (Fed. Cir. 2008) (en banc), changed the test for infringement. In doing so, we held "that the 'point of novelty' test should no longer be used in the analysis of a claim of design patent infringement" and that "the 'ordinary observer' test should be the sole test for determining whether a design patent has been infringed." Egyptian Goddess, 543 F.3d at 678. The issue

remains whether <u>Egyptian Goddess</u> also requires a similar change in the test for invalidity.  We reserved this question in <u>Egyptian Goddess</u> and more recently in <u>Titan Tire Corp. v. Case New Holland, Inc.</u>, 566 F.3d 1372, 1384 (Fed. Cir. 2009).  After careful consideration, we have concluded that the district court was correct in concluding that <u>Egyptian Goddess</u> necessarily requires a change in the standard for anticipation.

Section 171 of Title 35 provides the criteria for obtaining a design patent.  It provides that: "Whoever invents any new, original and ornamental design for an article of manufacture may obtain a patent therefor, subject to the conditions and requirements of this title."  35 U.S.C. § 171.  There are two differences in wording between the requirements for a design patent under § 171 and for a utility patent under 35 U.S.C. § 101.  Section 171 excludes the word "useful" (to distinguish design patents from utility patents) and adds the word "original."  The originality requirement in § 171 dates back to 1842 when Congress enacted the first design patent law.[1]  The purpose of incorporating an originality requirement is unclear; it likely was designed to incorporate the copyright concept of originality—requiring that the work be original with the author, although this concept did not find its way into the language of the Copyright Act until 1909.  <u>See</u> 1-2 Melville B. Nimmer & David Nimmer, <u>Nimmer On Copyright</u> § 2.01 (2005) (subject matter of copyright).  In any event, the courts have not construed the word "original" as requiring that design patents be treated differently than utility patents.

Section 171 requires that the "conditions and requirements of this title" be applied to design patents, thus requiring application of the provisions of sections 102

---

[1] Act of August 29, 1842, ch. 263, § 3, 5 Stat. 543.

(anticipation) and 103 (invalidity). Our cases have recognized that in the past we have applied a dual test for anticipation identical to the then-applicable test for infringement, namely the ordinary observer and point of novelty tests. See Bernhardt, L.L.C. v. Collezione Europa USA, Inc., 386 F.3d 1371, 1383 (Fed. Cir. 2004).[2] But the application of those tests in the context of infringement and anticipation was necessarily different.

In the case of infringement, in applying the ordinary observer test, we compared the patented design with the accused design. Contessa, 282 F.3d at 1377. In the case of anticipation, we compared the patented design with the alleged anticipatory reference. Door-Master Corp. v. Yorktowne, Inc., 256 F.3d 1308, 1313 (Fed. Cir. 2001).

In applying the point of novelty test in the case of infringement, we looked at whether the accused design appropriated the points of novelty of the patented design. Litton Sys., Inc. v. Whirlpool Corp., 728 F.2d 1423, 1444 (Fed. Cir. 1984) ("For a design patent to be infringed . . . no matter how similar two items look, 'the accused device must appropriate the novelty in the patented device which distinguishes it from the prior art.'" (internal citations omitted)). The points of novelty for the patented design were determined by comparing the patented design to the prior art designs. Bernhardt, 386 F.3d at 1382. In the case of anticipation, we compared the patented design with the alleged anticipatory reference to see if it appropriated the points of novelty of the prior art reference. The points of novelty of the prior art reference were determined by

---

[2] See also Contessa Food Prods., Inc. v. Conagra, Inc., 282 F.3d 1370, 1377 (Fed. Cir. 2002); Unidynamics Corp. v. Automatic Prods. Int'l Inc., 157 F.3d 1311, 1323-24 (Fed. Cir. 1998); Oakley, Inc. v. Int'l Tropic-Cal., Inc., 923 F.2d 167, 169 (Fed. Cir. 1991); Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc., 853 F.2d 1557, 1565 (Fed. Cir. 1988).

looking to earlier prior art to determine the points of novelty in the anticipatory reference. The ordinary observer and point of novelty tests were applied in much the same manner for obviousness as for anticipation,[3] except that in the case of obviousness the features of the prior art could be combined to create a single anticipatory reference or an earlier single reference could be modified based on the knowledge of a skilled artisan. See, e.g., Durling v. Spectrum Furniture Co., 101 F.3d 100, 103 (Fed. Cir. 1996).

While our cases have utilized the point of novelty test for infringement and anticipation, as we pointed out in Egyptian Goddess, 543 F.3d at 672, this test was not mandated by Smith v. Whitman Saddle Co., 148 U.S. 674 (1893), or precedent from other courts. In Whitman, the Supreme Court utilized only the ordinary observer test for determining infringement and invalidity, as did at least one later circuit case following Whitman (Bevin Bros. Mfg. Co. v. Starr Bros. Bell Co., 114 F. 362, 362 (C.C.D. Conn. 1902)).

Moreover, it has been well established for over a century that the same test must be used for both infringement and anticipation.[4] This general rule derives from the Supreme Court's proclamation 120 years ago in the context of utility patents: "[t]hat

---

[3] See Bernhardt, 386 F.3d at 1384 (noting that the point of novelty determination "is not especially different from the factual determinations that district courts routinely undertake" in their obviousness analysis); cf. Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co., 162 F.3d 1113, 1119 (Fed. Cir. 1998) (noting that the district court had "adopted the same points of novelty that it had relied on in determining that the '080 patent was not invalid for obviousness" and affirming the district court's decision); Litton, 728 F.2d at 1444 (applying the results of the obviousness analysis when determining the point of novelty of the claimed design).

[4] One possible exception is product by process claims. See Amgen Inc. v. F. Hoffmann-La Roche, Ltd., 580 F.3d 1340, 1370 (Fed. Cir. 2009) ("For product-by-process claims, that which anticipates if earlier does not necessarily infringe if later.")

which infringes, if later, would anticipate, if earlier." Peters v. Active Mfg. Co., 129 U.S. 530, 537 (1889). The same rule applies for design patents. See Bernhardt, 386 F.3d at 1378 (explaining that the test for determining anticipation of a design patent is the same as the test for infringement); Door-Master, 256 F.3d at 1312 (stating that the test for infringement is the same as the test for anticipation in the design patent context); Litton, 728 F.2d at 1440.

In Egyptian Goddess, we abandoned the point of novelty test for design patent infringement and held that the ordinary observer test should serve as the sole test for design patent infringement. 543 F.3d at 678. The ordinary observer test originated in 1871 when the Supreme Court held

> that if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.

Gorham Mfg. Co. v. White, 81 U.S. 511, 528 (1871). In Egyptian Goddess, we also refined the ordinary observer test by characterizing the ordinary observer as being "deemed to view the differences between the patented design and the accused product in the context of the prior art." 543 F.3d at 676. We explained:

> When the differences between the claimed and accused design are viewed in light of the prior art, the attention of the hypothetical ordinary observer will be drawn to those aspects of the claimed design that differ from the prior art. And when the claimed design is close to the prior art designs, small differences between the accused design and the claimed design are likely to be important to the eye of the hypothetical ordinary observer.

Id. We further determined that the point of novelty test, as a second and free-standing requirement for proof of design patent infringement, was inconsistent with the ordinary

observer test laid down in <u>Gorham</u> and was not mandated by Supreme Court cases or other precedent.  <u>Id</u>. at 672.

In light of Supreme Court precedent and our precedent holding that the same tests must be applied to infringement and anticipation, and our holding in <u>Egyptian Goddess</u> that the ordinary observer test is the sole test for infringement, we now conclude that the ordinary observer test must logically be the sole test for anticipation as well.  In doing so, we will prevent an inconsistency from developing between the infringement and anticipation analyses, and we will continue our well-established practice of maintaining identical tests for infringement and anticipation.

We note as well that the problems inherent in the point of novelty test in the infringement context also exist in the anticipation context.  The test is just as difficult to apply in the context of anticipation as in the context of infringement, encouraging the focus on minor differences between the allegedly anticipatory reference and the patented design.  So too, applying the point of novelty test in the context of anticipation, as in the context of infringement, creates the need to canvass the entire prior art to identify the points of novelty.  In addition, eliminating the point of novelty test for anticipation "has the advantage of avoiding the debate over the extent to which a combination of old design features can serve as a point of novelty under the point of novelty test."  <u>Id.</u> at 677.  Just as the problems deriving from the point of novelty test exist in both the infringement and anticipation contexts, the benefits of applying the refined ordinary observer test are identical in both.

Seaway's arguments to preserve the point of novelty test for invalidity are unconvincing.  Seaway argues that adopting the ordinary observer test for anticipation

will blur the distinction between the tests for obviousness under § 103 and for anticipation under § 102, resulting in jury confusion. According to Seaway, the test for invalidity due to obviousness is whether a designer of ordinary skill in the art would have found the patented design, as a whole, obvious in light of the prior art. Litton, 728 F.2d at 1443. The test for invalidity due to anticipation, on the other hand, requires the jury to consider the perspective of the ordinary consumer. There is in fact no potential for confusion. For design patents, the role of one skilled in the art in the obviousness context lies only in determining whether to combine earlier references to arrive at a single piece of art for comparison with the potential design or to modify a single prior art reference.[5] Once that piece of prior art has been constructed, obviousness, like anticipation, requires application of the ordinary observer test, not the view of one skilled in the art. And, as noted by Seaway, "[b]oth the ordinary observer test, whether applied for infringement or invalidity, and the obviousness test, applied for invalidity under Section 103, focus on the overall designs." Appellant's Br. 28 (citing OddzOn, 122 F.3d at 1405, and Litton, 728 F.2d at 1443). Under these circumstances, we see no potential for jury confusion.

---

[5] That combination or modification would not necessarily yield a single piece of prior art identical to a patented design since there may be no motivation to change the prior art to achieve such identity.

In summary, the district court did not err in concluding that the ordinary observer test is the sole test for design patent invalidity under § 102.

II

A

Seaway's second contention is that, even if the ordinary observer test is found to be the sole and proper test for anticipation under § 102, the district court misapplied the ordinary observer test by failing to compare the entirety of the patented designs, including the clogs' insoles, with the Crocs '789 patent. The district court, relying on Contessa, held "that the law requires a court to consider only those portions of the product that are visible during normal use, regardless of whether those portions are visible during the point of sale." Int'l Seaway Trading Corp., 599 F. Supp. 2d at 1315. The court did "not consider any aspects of the insoles of the shoes" because the insoles are "hidden by the user's foot." Id. We conclude that the district court erred, and we vacate and remand for a determination of whether the differences between the insole patterns in the patents-in-suit and in the prior Crocs art bar a finding of anticipation or obviousness.

In Contessa, we considered the issue of infringement with regard to a shrimp serving tray. The district court held that "any reasonable fact finder would conclude that the competing designs are substantially similar despite the minor differences in tray structure." Contessa, 282 F.3d at 1377. The district court did not consider the undersides of the trays because they were not visible at the time of sale. Id. at 1377-78. On appeal, we stated: "Our precedent makes clear that all of the ornamental features illustrated in the figures must be considered in evaluating design patent infringement."

_Id._ at 1378. We found that the district court in <u>Contessa</u> erred by limiting its infringement inquiry to those features visible at the time of sale, rather than to those features visible at any time in the "normal use" lifetime of the accused product. <u>Id.</u> at 1379. We explained that "normal use" in the design patent context extends from the completion of manufacture or assembly until the ultimate destruction, loss, or disappearance of the article. <u>Id.</u> at 1379-80 (citing <u>In re Webb</u>, 916 F.2d 1553, 1557-58 (Fed. Cir. 1990)). The same test necessarily applies to anticipation.

The district court here misconstrued <u>Contessa</u> as requiring that the normal use of a clog be limited to the time when it is worn. <u>Contessa</u> did not exclude the point of sale from the normal use of a product. Rather, it emphasized that normal use should not be limited to only one phase or portion of the normal use lifetime of an accused product. <u>Id.</u> at 1380 (citing <u>KeyStone Retaining Wall Sys., Inc. v. Westrock, Inc.</u>, 997 F.2d 1444, 1450 (Fed. Cir. 1993)). The sale of a clog occurs after it has been manufactured and before it is ultimately destroyed. Thus, the point of sale for a clog clearly occurs during its normal use lifetime. At the point of sale, the insole is visible to potential purchasers when the clog is displayed on a shelf or rack and when the clog is picked up for examination. Similarly, removing a clog from a wearer's foot also occurs after manufacture and before destruction of the clog, so it also falls squarely within the clog's normal use lifetime. The wearer may remove the clog temporarily to stretch out his or her toes, leave the clogs on the beach to go for a swim, or engage in countless other activities that would leave the insole exposed.

Walgreens and Touchsport acknowledge that the district court misinterpreted <u>Contessa</u> but argue that it was harmless error. They assert that it was a harmless error

because insoles have an insignificant effect on the overall visual appearance of the clogs. They claim there is a "universal truth that consumers buy shoes primarily for their exterior appearance. The insole therefore contributes little to the overall appearance of the shoe to an ordinary observer with knowledge of the prior art." Appellees' Br. 51. We reject this argument. The burden is on an accused infringer to show by clear and convincing evidence facts supporting the conclusion that the patent is invalid. Mentor H/S, Inc. v. Med. Device Alliance, Inc., 244 F.3d 1365, 1375 (Fed. Cir. 2001). Hence, Walgreens and Touchsport had the burden to establish by clear and convincing evidence that consumers do not consider the insoles of shoes to be significant. The appellees failed to present any evidence in support of this argument.

Walgreens and Touchsport also argue that the district court's error was harmless because the asserted differences between the insoles of the patents-in-suit and the prior art "were at most slight variations of design elements already present in the Crocs prior art." Appellees' Br. 51. We disagree. The insole pattern for the patents-in-suit is distinctly different than the Crocs insole pattern.

Figure 6 in the '789 Patent        Figure 6 in the '263 Patent

The Crocs '789 patent, as shown above in the figure on the left, contains a long, U-shaped dimpling pattern on the insole. In contrast, the patents-in-suit, as demonstrated above in the figure on the right, have a dimpling pattern that includes multiple short rows

of dimples.  Because we cannot say that these differences are insignificant as a matter of law, a genuine issue of material fact exists as to whether the designs would be viewed as substantially similar in the eyes of the ordinary observer armed with the knowledge of the prior art.

Beyond the insole features of its patented designs, Seaway argues that a genuine issue of material fact exists as to whether the exterior features of its designs preclude a finding of anticipation.  It claims that four exterior features differ from the prior art to the degree necessary to preclude summary judgment: (1) the number and arrangement of the circular openings on the upper of the clog; (2) the number and position of the rectangular cut-outs in the lower portion of the upper of the clog; (3) the shape of the toe portion of the clog; and (4) the raised pattern of the outsole of the clog. These features are identical in all three of Seaway's patents-in-suit.  With regard to these alleged dissimilarities, the district court stated:

> Slight variations on the number and position of the circular holes on the top of the shoe, the rectangular holes on the toe of the shoe as well as the design of different shaped rectangles on the sole of the shoe would not convince a reasonable jury, or an ordinary observer with knowledge of the prior art, that the limitations were not inherently disclosed in the ′789 patent. This conclusion does not change merely because plaintiff slightly changed the arrangement of the textured portions on the top and around the bottom portion of the sides of the shoe.

Int'l Seaway Trading Corp., 599 F.Supp. 2d at 1318.  We agree with the district court that these minor variations in the shoe are insufficient to preclude a finding of anticipation because they do not change the overall visual impression of the shoe. Although the ordinary observer test requires consideration of the design as a whole, Egyptian Goddess, 543 F.3d at 675; Contessa, 282 F.3d at 1378; Braun, Inc. v. Dynamics Corp. of Am., 975 F.2d 815, 820 (Fed. Cir. 1992), this does not prevent the

district court on summary judgment from determining that individual features of the design are insignificant from the point of view of the ordinary observer and should not be considered as part of the overall comparison. The mandated overall comparison is a comparison taking into account significant differences between the two designs, not minor or trivial differences that necessarily exist between any two designs that are not exact copies of one another. Just as "minor differences between a patented design and an accused article's design cannot, and shall not, prevent a finding of infringement," Litton, 728 F.2d at 1444, so too minor differences cannot prevent a finding of anticipation.

B

As an alternative basis for affirming the judgment, Walgreens and Touchsport argue that the patents-in-suit are invalid as obvious under § 103. The district court did not determine whether obviousness was a ground for finding invalidity. Int'l Seaway Trading Corp., 599 F. Supp. 2d at 1313 ("Since this Court holds that the patent is anticipated under § 102 it will not determine whether the patent was also obvious under § 103."). Nonetheless, Walgreens and Touchsport assert that the issue can be considered on appeal because they raised both anticipation and obviousness arguments below.

Obviousness, like anticipation, requires courts to consider the perspective of the ordinary observer. Therefore, for the same reasons that the district court's failure to compare the insoles of the patented designs to the prior art designs precludes a finding of anticipation, it also precludes a finding of obviousness.

We thus conclude that, while the district court correctly determined that there was no genuine issue of material fact that the exterior features of the patented designs were substantially similar to the Crocs '789 patent, the court erred by failing to consider the insoles of the patents-in-suit in its invalidity analysis.

CONCLUSION

In summary, we conclude that the district court correctly held that the ordinary observer test is the sole test of invalidity. The district court erred, however, in failing to compare the insole patterns in Seaway's patented designs to the prior art as part of an overall comparison of the designs. We vacate and remand for further proceedings on the limited issue of whether the differences in the insole patterns between the prior (Crocs) art and the patented designs bar a finding of anticipation or obviousness.

AFFIRMED-IN-PART, VACATED-IN-PART, and REMANDED

COSTS

No costs.

# United States Court of Appeals for the Federal Circuit

2009-1237

INTERNATIONAL SEAWAY TRADING CORPORATION,

Plaintiff-Appellant,

v.

WALGREENS CORPORATION and
TOUCHSPORT FOOTWEAR USA, INC.,

Defendants-Appellees.

Appeal from the United States District Court for the Southern District of Florida
in case no 08-CV-80163, Senior Judge Kenneth L. Ryskamp.

CLEVENGER, Circuit Judge, dissenting in part.

I part company with the court on only one issue, which is the scope of the district court's further action on remand.

The majority concludes that the district court was correct as a matter of law in holding that the ordinary observer must find anticipation when comparing the four different exterior design elements of the patented designs with the Crocs design patent. However, with regard to the comparable insole designs, the majority ascertains a sufficient difference to preclude anticipation as a matter of law. The majority thus concludes that the law permits dissection of a design as a whole into its component pieces. With laser-like focus, the fact finder is permitted to decide that the changes on the top of the clogs are trivial enough to sustain anticipation. The same holds for changed design elements on the lower portions of the clogs, the shape of the toe

portions and the raised pattern of the outsoles. Because the majority is not satisfied that the same can be said of the changed insole design, which the district court erroneously refused to assess, the insole design is carved out of the overall design and independently remanded for further proceedings.

As recognized by the majority, the ordinary observer test requires assessment of the designs as a whole. See Egyptian Goddess v. Swisa, Inc., 543 F.3d 665, 675 (Fed. Cir. 2008) (en banc); Contessa Food Prods., Inc. v. Conagra, Inc., 282 F.3d 1370, 1378 (Fed. Cir. 2002); Oddzon Prods., Inc. v. Just Toys, Inc., 122 F.3d 1396, 1405 (Fed. Cir. 1997). I agree that the differences in the inner sole designs are to be assessed as part of the anticipation inquiry. But the differences in the inner sole designs must be appreciated in conjunction with all of the design differences. This is so especially with regard to the differing number and arrangement of the circular openings on the upper of the clogs.




Fig. 6 for Crocs '789 Patent [A031]       Fig. 6 for Wolf '263 Patent [A024]

When the two designs are observed from above, as shown in the above figures, the distinctions in the different number and location of the circular openings on the upper of the clogs are apparent, in addition to the different insole designs. And when the differing insoles are sorted in the mind of the ordinary observer along with the four external differences of the clogs, the ordinary observer surely reaches a different

conclusion about the designs as a whole than when the ordinary observer only looks at the differences in the insoles.

The effect of the majority bifurcation of the insole design differences from the exterior design differences, and the piecemeal adjudication of the exterior design differences, is to treat the patents on remand as without any exterior design. The fact finder will only assess anticipation on the basis of design differences on the insoles. I think this violates the rule for anticipation that the designs have to be compared as a whole. The effect of the summation of all the design differences is what counts, not the comparison of differences one by one, isolated from each other. Such an approach invites the problems we sought to eliminate by rejecting the "point of novelty" test. As the court stated in Egyptian Goddess, when there are several different alleged points of novelty, "[t]he attention of the court may therefore be focused on whether the accused design has appropriated a single specified feature of the claimed design, rather than on the proper inquiry, i.e., whether the accused design has appropriated the claimed design as a whole." 543 F.3d at 667. Remanding for adjudication of anticipation solely on the insole inappropriately focuses the fact finder on a single specified feature of the claimed design.

The majority has forged a new rule for design patent anticipation, if not for infringement as well. The new rule is that the "design as a whole" rule

> does not prevent the district court on summary judgment from determining that individual features of the design are insignificant from the point of view of the ordinary observer and should not be considered as part of the overall comparison. The mandated overall comparison is a comparison taking into account significant differences between the two designs, not minor or trivial differences that necessarily exist between any two designs that are not exact copies of one another. Just as 'minor differences between a patented design and an accused article's design cannot, and

shall not, prevent a finding of infringement,' Litton, 728 F.2d 1444, so too minor differences cannot prevent a finding of anticipation.

Maj. Op. at 16, lines 1-12.

The majority's reliance on Litton Systems, Inc. v. Whirlpool Corp., 728 F.2d 1423 (Fed. Cir. 1984), to support its new rule is misplaced. The quotation from the Litton opinion is in the context of that court's faithful application of the "design as a whole" rule. Minor differences between one design taken as a whole and another design likewise appreciated (the "mandated overall comparison"), of course, cannot fool the ordinary observer. So the court in Litton, after earlier quoting verbatim from Gorham Co. v. White, was correct in stating "that minor differences between a patented design and an accused article's design cannot, and shall not, prevent a finding of infringement." 728 F.2d at 1444 (emphasis added). The majority would have us believe that the Litton decision authorizes dissection of designs into component parts for purposes of partial summary judgments of anticipation or infringement. That is not correct and runs counter to precedent.[1]

The district court should be directed on remand to evaluate the differences in the designs as a whole. Partial judgments of anticipation on segments of a design prohibit assessment of designs as a whole, in violation of long-standing law, starting with Gorham.

---

[1] See, e.g., Braun Inc. v. Dynamics Corp. of Am., 975 F.2d 815, 820 (Fed. Cir. 1992) ("In evaluating a claim of design patent infringement, a trier of fact must consider the ornamental aspects of the design as a whole and not merely isolated portions of the patented design.") (citing In re Salmon, 705 F.2d 1579, 1582 (Fed. Cir. 1983)); In re Rubinfield, 270 F.2d 391, 395 (CCPA 1959) ("It has been consistently held for many years that it is the appearance of a design as a whole which is controlling in determining questions of patentability and infringement."), cert. denied, 362 U.S. 903 (1960).